# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| MARISOL VEGA, on behalf of K.I.V., <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. C14-4060-LTS <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Marisol Vega (Vega), on behalf of her child, K.I.V., seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for child Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Vega contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that K.I.V. was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision will be reversed and remanded.

## I. BACKGROUND

K.I.V. was born in 2003 and was in the fourth grade at the time of hearing. AR 38, 134. Vega alleges that K.I.V. is disabled due to partial complex seizures with secondarily generalized tonic-clonic seizures, attention deficit hyperactivity disorder and anxiety disorder. AR 291, 680. Vega protectively filed an application for SSI on K.I.V.'s behalf on August 31, 2011. AR 64-65, 72-73, 134-40. She alleged that K.I.V. has been disabled since January 1, 2009. AR 134.

The application was denied initially and on reconsideration. AR 82-84, 89-92. Vega then sought a hearing before an administrative law judge (ALJ). On March 4, 2013, ALJ Jan Dutton conducted a hearing, at which Vega and K.I.V. testified. AR 33-63. On April 4, 2013, the ALJ issued a decision denying the claim. AR 10-27. The Appeals Council denied Vega's request for review on June 24, 2014. AR 1-3. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. § 416.1481.

Vega filed a complaint (Doc. No. 3) in this Court on September 12, 2014, seeking review of the ALJ's decision. On October 20, 2014, with the consent of the parties (Doc. No. 6), the Honorable Mark W. Bennett transferred this case to me for final disposition and entry of judgment. The parties have now briefed the issues and the matter is fully submitted.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

The Commissioner's regulations establish a three-step sequential evaluation process for determining whether a child is disabled as defined in the Act: (1) determination of whether the child is engaged in "substantial gainful activity," (2) determination of whether the child's impairment or combination of impairments is severe, and (3) determination of whether the child's impairment or combination of impairments "meets, medically equals, or functionally equals" a listed impairment. *See* 20 C.F.R. § 416.924(a).

At Step One, if the child is engaged in substantial gainful activity, the child is not disabled. *Id*. § 416.924(b). At Step Two, if the child's impairment or combination of impairments amounts only to "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," the child is not disabled. *Id*. § 416.924(c). At Step Three, if the child's impairment or combination of impairments does not "meet, medically equal, or functionally equal" a listed impairment,

the child is not disabled. *Id*. § 416.924(d). A listed impairment is an impairment considered to be severe enough to prevent a child from doing any gainful activity and is characterized by "impairments that cause marked and severe functional limitations." *Id*. § 416.925(a). The listings are located at 20 C.F.R. Part. 404, Subpart P, Appendix 1.

When determining at Step Three whether the child's impairment or combination of impairments is functionally equivalent to a listed impairment, an ALJ must consider six domains of functionality: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) ability to care for oneself and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To be found disabled at Step Three, the child's impairment or combination of impairments "must result in 'marked' limitations in two domains of [functionality] or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).

### III.   THE ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant was born on January 31, 2003. Therefore, she was a preschooler on August 31, 2011, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

(2) The claimant has not engaged in substantial gainful activity since August 31, 2011, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

(3) The claimant has the following severe impairments: complex partial seizure disorder (controlled with medication), attention deficit hyperactivity disorder, and anxiety. (20 CFR 416.924(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in

3

    20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

 (5) The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926(a).

 (6) The claimant has not been disabled, as defined in the Social Security Act, since August 31, 2011, the date the application was filed (20 CFR 416.924(a)).

AR 13-27.

## IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit Court of Appeals has explained this standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search

the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Vega contends the ALJ's decision is not supported by substantial evidence and makes the following arguments:

(1) The ALJ failed to discuss or explain the correct criteria for Listings 112.06 and 112.011, and failed to discuss or explain any factual evaluation of the

5

criteria of those listings; and failed to even consider the Listing for Plaintiff's seizure disorder, Listing 111.03.

(2) The ALJ failed to consider or explain reasons for not considering treating source opinions, and failed to develop the record fully by contacting treating sources or by obtaining medical expert assistance or consultative evaluations.

(3) The ALJ discounted the sworn testimony of K.I.V. and Vega without providing good reasons for doing so.

I will address these arguments separately.

## A. *Evaluations of Listing Criteria*

Vega argues that the ALJ failed to conduct an appropriate evaluation of Listings 112.06 and 112.11. Additionally, she contends that the ALJ failed to even consider the applicable listing for K.I.V.'s alleged seizure disorder. The Commissioner argues that the ALJ correctly considered Listings 112.06 and 112.11 and was not required to consider the seizure listing because Vega's counsel represented during the administrative hearing that Vega and K.I.V. were not arguing disability under that listing.

### 1. *Applicable Standards*

The Supreme Court has explained the listings as follows:

> The listings . . . are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . .
>
> For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. . . . A claimant cannot

qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment.

*Sullivan v. Zebley*, 493 U.S. 521, 529-32 (1990) [citations and footnotes omitted]. The purpose of the listings is to streamline the decision process by identifying claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational backgrounds. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). Thus, if an impairment meets or equals one of the listings, the claimant is considered disabled regardless of age, education, and work experience. *Kelley*, 133 F.3d at 588.

The claimant has the burden of proving that his or her impairment meets or equals a listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record." *Boettcher v. Astrue*, 652 F. 3d 860, 863 (8th Cir. 2011) (citing *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003); *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001)).

### 2. *Analysis*

The ALJ stated that she considered all applicable listed impairments, including 112.06 and 112.11. AR 17. The ALJ also noted that the state agency medical consultants found that K.I.V. did not meet or medically equal the requirements of any listing. *Id.* Unfortunately, it is clear that the ALJ considered the adult criteria for Listings 112.06 and 112.11, not the criteria for children. Appendix 1 lists the functional measuring limitations for adults, which include: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R., Subpt. P., App. 1, (Part A), § 12. The ALJ referenced these criteria in finding that K.I.V. did not meet the requirements of either listing. AR 17.

7

The functional criteria to be used for children include: motor function; cognitive/communicative function; social function; personal function; and concentration, persistence, or pace. 20 C.F.R., Subpt. P., App. 1, (Part B) § 112. While there is some overlap between the two sets of criteria, they are far from identical. In addition, the Listings recognize that there are disorders found in children that have no real analogy in adults. 20 C.F.R., Subpt. P., App. 1, (Part B) § 112. Vega contends that the ALJ's consideration of the wrong criteria requires remand. The Commissioner argues that the ALJ's reference to the wrong criteria was harmless error.

I agree with Vega. The ALJ failed to follow the Social Security Administration's binding regulations, which dictate consideration of a different set of criteria when the claimant is a child. The Commissioner's suggestion that a reviewing court can ignore this error, and predict what the ALJ might have done had she considered the correct criteria, is contrary to basic principles of administrative law. *See, e.g.*, *Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir. 1990) (per curiam) ("an agency's failure to follow its own binding regulations is a reversible abuse of discretion"); *Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990) ("A court must consider the agency's rationale for its decision, and if that rationale is inadequate or improper the court must reverse and remand for the agency to consider whether to pursue a new rationale for its decision or perhaps to change its decision.").

It is hardly unfair to expect that the Commissioner's administrative law judges will consider the correct criteria, as specified by the Commissioner's own regulations, before denying a claim. While it is certainly possible, as the Commissioner now suggests, that the outcome would have been the same, it is not this court's role to make that prediction. This case must be remanded with directions that the ALJ consider Listings 112.06 and

112.11 in light of the appropriate "child" criteria, as set forth in 20 C.F.R., Subpt. P., App. 1, (Part B) § 112.[1]

## B.     Evaluation of the Medical Evidence

Vega raises various arguments concerning the ALJ's analysis of the medical evidence at Step Three. She argues that the ALJ failed to develop the record fully by obtaining opinions from treating or examining sources. She also argues that the ALJ erroneously relied on the opinions of state agency consultants without giving proper weight to evidence from treating sources. Finally, she argues that new evidence presented to the Appeals Council shows that the ALJ's findings are not supported by substantial evidence on the record as a whole.

### 1.     Applicable standards

An ALJ has a duty to develop the record fully and fairly, independent of the claimant's burden to press his or her case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (quoting *Naber*, 22 F.3d at 189). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001) (quoting *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1994)).

---

[1] Vega also argues that the ALJ erred by failing to consider Listing 111.03, for nonconvulsive epilepsy. During the hearing, however, counsel for Vega and KIV confirmed that KIV did not meet any seizure listing. AR 63. This admission constitutes substantial evidence supporting the ALJ's decision. *See, e.g.*, *McCarthy v. Apfel*, 221 F.3d 1119, 1125 (9th Cir. 2000) (admission by claimant's attorney to the ALJ constitutes substantial evidence). The ALJ may, but is not required to, consider Listing 111.03 on remand.

The obligation to obtain additional medical evidence comes from the ALJ's duty to develop the record. *See Snead*, 360 F.3d at 838 ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (quoting *Barrett v. Shalala*, 38 F.3d 1019 (8th Cir. 1994)). The ALJ does not "have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citing *Snead*, 360 F.3d at 839). "The regulations do not require an ALJ to recontact a treating physician whose opinion is inherently contradictory or unreliable." *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006).

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b)). "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Other relevant evidence includes medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a state agency medical . . . consultant." 20 C.F.R. § 416.927(e)(2)(ii).

## 2. Analysis

### a. Did the ALJ Fail to Fully Develop the Record?

During the hearing, counsel for Vega and K.I.V. acknowledged that the record contained no treating source opinions. AR 37. The ALJ ultimately decided the claim based on the evidence already of record without seeking additional information or opinions. Vega now contends that this was error.

As noted above, while a Social Security claimant bears the ultimate burden of proof, the ALJ nonetheless has a duty to develop the record fully and fairly. *Vossen,* 612 F.3d at 1016. However, the ALJ must obtain addition information only if the existing record is not sufficient to determine whether the claimant is disabled. *Halverson*, 600 F.3d at 933. The ALJ's duty to re-contact treating physicians arises "only if a crucial issue is undeveloped." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (citing *Stormo*, 377 F.3d at 806). After my careful review of the record, I find Vega has failed to show that the ALJ abrogated her duty to fully develop the record.

The record contains a large volume of treatment records from various providers. Two state agency consultants reviewed the available records and provided detailed opinions in October and November of 2011. AR 65-71, 73-81. While Vega complains K.I.V.'s treating sources might have been able to provide "more detailed opinions" had the ALJ contacted them, I find that she has failed to provide support for this claim.[2] Vega has not shown that any crucial issues were so undeveloped as to have required additional development of the record.

---

[2] Indeed, and as I will discuss further below, the only treating source evidence Vega provided to the Appeals Council on review contained no new information of evidentiary value.

### b. *Did the ALJ Properly Analyze the Medical Evidence?*

Vega contends that the ALJ's decision is not supported by substantial evidence because the ALJ disregarded evidence from treating sources and relied entirely on the opinions of the non-examining agency physicians. I find no merit in either argument.

With regard to evidence from treating sources, Vega references an October 18, 2010, report from Robin Rowland, K.I.V.'s therapist. AR 229-32. I agree with the Commissioner that the ALJ was entitled to disregard that report for at least two reasons. First, it was created nearly one year before the relevant period of time, which began August 31, 2011 (the application date).[3] AR 13. Second, Ms. Rowland was not an acceptable medical source. 20 C.F.R. § 416.913(a)(1-6). Moreover, the report at issue does not indicate limitations that are meaningfully more severe than those determined by the ALJ. Ms. Rowland found that K.I.V.'s baseline functioning was average and assigned her Global Assessment of Functioning ("GAF") score was 60, which corresponds to only moderate degree of impairment. AR 230, 232.[4]

Vega also refers to an unsigned intake form, dated August 10, 2011, from Siouxland Mental Health Center. AR 286-90. Again, this document pre-dates the relevant period of time. Moreover, the fact that its author is unknown makes its probative value unclear, at best. The ALJ was not required to give any particular amount of weight to the intake form.

---

[3] SSI benefits are not payable for any period of time prior to the application date. 20 C.F.R. § 416.335.

[4] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed.) (DSM–IV). A GAF score of 51–60 indicates the individual has moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Id*.

Vega also references numerous treatment notes from various counselors and physicians. Doc. No. 11 at 13-14. If she intends to argue that the ALJ failed to consider that evidence, the ALJ's decision indicates otherwise. The ALJ stated that she considered evidence about K.I.V.'s seizures, her EEG and MRI testing, the effectiveness of her seizure medications, treatment notes from Transitional Services of Iowa, updated mental health clinic notes, Siouxland Mental Health Center records, a report by Jessica Barnes, a Licensed Social Worker, records from Ronald Brinck, Ph.D., and statements from K.I.V.'s teacher. AR 18-20, 22. While Vega clearly disagrees with the manner in which the ALJ weighed that evidence, it is not the reviewing court's task to re-weigh evidence in the record. *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). Vega has failed to show that the ALJ's analysis of treating-source evidence was improper.

As for the ALJ's reliance on opinions from non-examining sources, Vega is correct that "[t]he opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) (citing *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999)). At the same time, however, state agency physicians are to be treated as experts when issuing opinions "regarding the nature and severity of an individual's impairment(s)." SSR 96-6p, 1996 WL 374180, at *1; *see also* 20 C.F.R. § 416.913(a)(1). In evaluating all evidence of record, the ALJ may rely on the opinions of state agency consultants. *See, e.g., Toland*, 761 F.3d at 937; *Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014). This is true even when treating sources have provided opinions that differ from those of the non-examining consultants. *Hacker*, 459 F.3d at 937-39 (affirming the ALJ's finding that the opinion of a psychologist who reviewed medical records was entitled to more weight than the opinions of two treating sources).

Here, of course, there were no treating source opinions as of the date of the hearing. The ALJ considered all of the evidence of record, including evidence submitted

after the state agency consultants issued their reports, AR 19, and made findings that are largely consistent with the opinions provided by the state agency consultants. I conclude that the ALJ did not err in relying on those opinions and that the ALJ's findings as to the severity of K.I.V.'s impairments are supported by substantial evidence on the record as a whole.

### c. *Was Remand Required Based on New Evidence?*

Vega argues that remand is necessary because of new treating source evidence that she submitted to the Appeals Council. That evidence was in the form a one-paragraph letter dated May 2, 2013, and provided by Young Oliver, M.D. AR 747. Dr. Oliver stated that K.I.V. was diagnosed with "complex partial seizures with secondary generalized tonic-clonic seizures." *Id.* He also stated that she was being treated with Trileptal, that she was considered to have a disability, and that she required supervision and assistance with daily living activities. *Id.*

The Commissioner's regulations describe the process for consideration of new and material evidence as follows:

> [T]he Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision. It will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 416.1470(b). If the Appeals Council considers the new evidence, but declines to review the case, the court reviews the ALJ's decision to determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision. *Browning*, 958 F.2d at 823 n. 4. Here, the Appeals Council considered Dr. Oliver's letter but declined review. AR 1-2, 4.

In arguing that remand is not required, the Commissioner notes that a treating source opinion deserves no greater weight than any other opinion if it is vague and conclusory. Doc. No. 12 at 14 (citing *Toland*, 761 F.3d at 937). While *Toland* involved a pre-printed checklist form, Dr. Oliver's letter is no better. Dr. Oliver made a short series of statements about K.I.V.'s diagnosis and treatment. AR 747. He then stated that she "is considered to have a disability," *id.*, thus commenting on an issue reserved to the Commissioner. *See, e.g., House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."). Dr. Oliver then noted that she has "fair cognitive function" but "requires assistance with daily living activities." AR 747. He did not explain the types or levels of assistance K.I.V. might need. *Id.* Nor did he offer any opinions as to K.I.V.'s restrictions and capabilities. *Id.*

I agree with the Commissioner that Dr. Oliver's letter does not require remand. The opinion provides no guidance as to K.I.V.'s abilities with regard to any of the six relevant domains of functionality. 20 C.F.R. § 416.926a(b)(1). Moreover, treating source opinions are "not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data." *Cumberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) (quoting *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989)). Here, no clinical or diagnostic data was provided to support Dr. Oliver's opinion.

In short, the new evidence added nothing of evidentiary value to the record. While it was appropriate for the Appeals Council to consider Dr. Oliver's letter, I find that there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's Step Three findings.

## C. Evaluation of Credibility

Finally, Vega argues that the ALJ failed to state adequate reasons for discounting K.I.V.'s credibility and that the ALJ should have given more weight to Vega's own testimony.

### 1. Applicable Standards

In determining a claimant's credibility, the ALJ must consider:

    (1)    the claimant's daily activities;

    (2)    the duration, intensity, and frequency of pain;

    (3)    the precipitating and aggravating factors;

    (4)    the dosage, effectiveness, and side effects of medication; and

    (5)    any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); see also 20 C.F.R. § 416.929(c)(3). "Other relevant factors include the claimant's relevant work history, and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)).

While an ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, the lack of such evidence is a factor the ALJ may consider. *Halverson*, 600 F.3d at 931-32; *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). A claimant's credibility is "primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Thus, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id*.

*2. Analysis*

The ALJ referenced the relevant factors and provided an explanation for her decision to discredit K.I.V. AR 20. Having carefully reviewed the ALJ's explanation, I find it to be supported by substantial evidence. The ALJ noted, among other things:

1. K.I.V.'s subjective complaints are not supported by objective evidence.

2. No doctor or mental health professional suggested that K.I.V. apply for disability benefits.

3. Other than dizziness and sweatiness, K.I.V. admits that she has no special physical needs or problems with standing, walking, sitting or lifting.

4. K.I.V.'s anti-seizure medication and mental health medications have been generally effective with no significant side effects.

5. K.I.V.'s activities of daily living are inconsistent with disability.

AR 20. All of these factors are good reasons to discredit a claimant's credibility and are supported by substantial evidence. There is no evidence, for example, that any doctor imposed any significant restrictions on K.I.V.'s activities. This lack of restrictions is inconsistent with a claim of disability. *See, e.g.*, *Tennant v. Apfel*, 224 F.3d 869, 870 (8th Cir. 2000).

As for daily activities, the relevant inquiry for a child is whether his or her functioning is age-appropriate when compared to other children of the same age. *See* 20 C.F.R. § 416.924a(b)(3). The ALJ accurately summarized K.I.V.'s testimony that she played with her cousins, helped her mother, and did her homework. AR 18, 40-42. K.I.V. also testified that she got ready for school by herself. AR 41. She testified that homework is "hard for me to, like, do because there's like, lots of other stuff I want to do; but I do it." AR 43-44. The ALJ was entitled to find that K.I.V.'s activities of daily living are inconsistent with her claim of disability.

As for Vega's credibility, Vega's primary argument is that the ALJ interrupted her testimony because the ALJ "clearly did not want to hear the answer." Doc. No. 11 at 21 (citing AR 51, 56). This is hyperbole. On one of the cited pages (AR 51), the transcript does make it appear that the ALJ twice asked a new question before Vega completed her answer to the prior question. Of course, simply reading the transcript does not reveal whether Vega was still talking, and was thus interrupted, or simply started to say more and then stopped on her own before the ALJ asked the next question. Her attorney (the same attorney who signed Vega's brief) made no record about any alleged interruption.

On the other cited page (AR 56), the ALJ said "Okay" in the middle of an answer but allowed Vega to complete the answer. Over the course of ten transcript pages of examination by the ALJ, which include several long answers by Vega, these are the only instances of alleged "interruptions." AR 48-54, 60-62. Her attorney then asked follow-up questions, after first noting that the ALJ had already asked most of his questions. AR 54-60. The ALJ concluded by asking Vega if they had "covered everything that you wanted to say" and if there was "[a]nything else that you want to add?" AR 60-61. She answered: "No." AR 61.

On this record, Vega's counsel's contention that the ALJ interrupted Vega's testimony because the ALJ "clearly did not want to hear the answer" is one of the weakest arguments I have ever encountered. The ALJ did not prevent Vega from testifying. If Vega possessed relevant informant that somehow did not find its way into the record, her own counsel is entirely to blame.

Vega makes no other argument about the ALJ's assessment of her credibility. While the ALJ did not separately address Vega's credibility, it appears that she considered it concurrently with K.I.V.'s. *See, e.g.*, AR 20 (discussing an allegation made by K.I.V. "and her parent"). An ALJ may discount third-party testimony on the same grounds as he or she discounts a claimant's own testimony. *Black v. Apfel*, 143 F.3d 383, 387 (8th

18

Cir. 1998). If an ALJ provides good reasons for discrediting a claimant's testimony, the ALJ is not required to address similar testimony by a third-party witness. *See, e.g.*, *Buckner v. Astrue*, 646 F.3d 549, 559–60 (8th Cir. 2011) (ALJ's failure to explicitly address observations of claimant's girlfriend did not require remand when the observations were identical to claimant's statements and ALJ discounted credibility of claimant).

Because the ALJ provided good reasons for discrediting K.I.V.'s testimony, he was entitled to similarly discredit Vega's testimony. I find that the ALJ's credibility determinations are supported by substantial evidence in the record as a whole.

### *VI. CONCLUSION*

For the reasons set forth herein, the Commissioner's determination that K.I.V. was not disabled is **reversed and remanded** for further proceedings consistent with this order. Judgment shall enter in favor of the plaintiff and against the defendant.

On remand, the ALJ must evaluate Listings 112.06 and 112.11 in light of the appropriate "child" criteria, as set forth in 20 C.F.R., Subpt. P., App. 1, (Part B) § 112. In addition, the ALJ may, but is not required to, evaluate Listing 111.03.

**IT IS SO ORDERED.**
**DATED** this 10th day of September, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE